UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL YOUNG                                                         CIVIL ACTION

VERSUS                                                                NO. 10-3652

MARLON GUSMAN  ET AL.                                                 SECTION "J" (2)

### REPORT AND RECOMMENDATION

Plaintiff, Michael Young, is a convicted prisoner currently incarcerated in the Elayn Hunt Correctional Center ("Hunt") in St. Gabriel, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlon Gusman, Doctors Gore, Ham, DiLeo and Gauthreaux and Lieutenant Thompson, all of whom are or were employed at the Orleans Parish Prison system ("OPP"). Young alleges that while incarcerated in OPP in 2009 and 2010, he received constitutionally inadequate medical care for his broken hand. He seeks "financial compensation in the amount of $1,000,000.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On January 18, 2011, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Young testified that he is currently incarcerated based on a conviction for second degree battery on March 1, 2010, for which he is serving a sentence of two-and-one-half years in prison. He stated that he was incarcerated in OPP based on this charge upon his arrest on February 14, 2009, and he remained in OPP following his conviction until November 23, 2010, when he was transferred. He confirmed that his only claim in this case alleging inadequate medical care for his broken hand arises exclusively from the period of time during which he was incarcerated in OPP.

Plaintiff acknowledged that he had received and reviewed his OPP medical records that I previously ordered, Record Doc. Nos. 5, 21 and 22, and that they are accurate, except that a few records appear to be missing. He said the missing documents include certain "appointment sheets" and any records reflecting an August 3, 2009 return to the orthopedic clinic LSU hospital for an examination of his hand, during which he was told that his hand had been reinjured and that he needed surgery. Young testified that OPP officials took him back to the hospital on that date to have the cast removed from his broken hand, but upon reviewing x-rays, a doctor at the clinic told him that his hand had been reinjured and recommended surgery. Young said he agreed to have the surgery to have pins placed in his thumb. He said his surgery was scheduled, but it was postponed

once, and then canceled without explanation.  He stated that he did not return to the hospital orthopedic clinic until November 4, 2009.

Young testified that his hand was injured on April 19, 2009 in an altercation with another inmate at OPP.  He confirmed the indication in his medical records that he was transported from the jail to University Hospital that same day.  Young stated that at the hospital his hand was x-rayed and a splint was placed on it.  He said he was told to come back within a week to have a permanent cast put on his hand.  He said he was not taken back to the hospital until May 24, 2009, when he was transported from the jail to the hospital emergency room because his earlier appointment had been missed and the splint on his arm had become worn out, mildewed and useless.  He complained about this delay in being returned to the hospital.  He stated that on that date his hand was x-rayed again, another temporary splint was placed on his hand, and he was told he would have to come back to have a permanent cast put on it.

Plaintiff stated that he was seen by defendant Dr. Gore at OPP on May 26, 2009, when he returned to OPP from the hospital. Young stated that Dr. Gore did nothing, told him he was complaining for no reason and did not provide him with the medication prescribed for him at the hospital. He complained that the Percocet and Altran prescriptions he had been given at the hospital were canceled by OPP medical staff and

replaced with Naprosyn, which Young said he was provided twice a day for the duration of his stay in OPP. He did not know the difference between Naprosyn and Altran.

Young testified that he returned to the hospital on July 8, 2009. He stated, however, that on June 24 or 25, 2009, when he was transferred from the medical tier at OPP, the splint was removed from his hand by Lt. Thompson, with the knowledge of Sheriff Gusman, because they concluded that it could be used as a weapon. Young testified that he was not returned to the hospital to have the permanent cast placed on his hand until about two weeks later, so that he was without any protection for his hand during that two weeks. He stated that on July 8, 2009 a "thumb spica" cast was placed on his hand at the hospital. Young said Dr. Gore saw him at OPP on July 21, 2009, and again did nothing in response to Young's request to be placed on the medical tier. Young said Dr. Gore told him that he would not be given Altran, but would receive Naprosyn instead.

Young confirmed that he was seen by a nurse practitioner at OPP on August 20, 2009, by which time his cast had been removed at the hospital on August 3, 2009, the same day he discussed having surgery on his hand with the doctor at the orthopedic clinic. He confirmed that he was seen again by the nurse in September 2009.

Young confirmed that he was taken back to the hospital on November 4, 2009, for a follow-up examination of his hand fracture. He confirmed that physical therapy was

4

recommended for his hand and that the record states "no surgical intervention at this time." Young testified that on that date the doctor in fact told him, "he couldn't re-break it and put the pins in there . . . I had an option to either deal with pain and still move my thumb or either get a CMC fusion, which would have my thumb locked in place, and I told him I didn't want the fusion." The medical records note that he continued to have pain in his hand, and Young confirmed the notation in the record that he declined to have the fusion. He also confirmed that he returned to the hospital for both leg pain and his hand on January 18, 2010, and his hand was examined on that date. After having his recollection refreshed by reviewing the medical records, he recalled having an MRI performed on his hand in November 2009 at the LSU hospital orthopedic clinic, as reflected in the records. He did not recall the reference in his medical records indicating that he was returned to the orthopaedic clinic at the hospital on January 26, 2010 and again on April 26, 2010, which record indicates that further x-rays of his hand were taken and "conservative management opted for." Young testified that he was again taken to the hospital on June 2, 2010, for a follow-up x-ray of his hand.

    Asked to describe the current condition of his hand, Young said "the base of my right thumb . . . is still swollen. I have chronic arthritis in my hand. When it hurts, it feels like it's broken all over again. There's constant cracking . . . because it's bone rubbing on bone. Sometimes, I lose sensation in my hand. . . . if I write anything for more than

five or ten minutes, my hand swells up." He said he continues to receive Naprosyn for his hand at his current place of incarceration, but no other treatment, and he complained that he can no longer firmly grip things in his injured hand.

He summarized that his complaint about the medical care he received for his hand at OPP was that it "was very unprofessional."

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims. Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006)

(quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

8

Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, under the broadest reading.[1]

## II.   MEDICAL CARE

Young was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care at OPP. He asserts that he received inadequate medical care for a the broken hand he suffered in an altercation with another inmate.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

9

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he

demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991));

accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Young must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Even assuming, without concluding, that plaintiff's broken hand presented a serious medical need for constitutional purposes, Young has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.

13

Young testified and the medical records reflect that he was taken to the hospital from the jail on the very same day he broke his hand in a fight with another inmate. He received x-rays, a splint and medication. He spent some time on the OPP medical care tier, was given Naprosyn and seen by a nurse practitioner and Doctor Gore at the jail, and was transported from the jail back to the hospital periodically on numerous occasions for follow-up care, examination and evaluation.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication

prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Young may allege delay in receiving medical care in that he did not receive treatment when he thought it was necessary or should have been provided, and he has expressed dissatisfaction with the quality, extent and effectiveness of his overall treatment, including OPP doctors' substitution of Naprosyn for another medication and failure to place him on the medical tier at all relevant times, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the extensive medical care Young has received during his pre-trial incarceration.

Contentions like Young's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical

16

services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___22nd___ day of February, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.